UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**GREAT LAKES CHEESE OF NEW YORK, INC.**,

        Plaintiff,

v.

**AGRI-MARK, INC.**,

        Defendant.

Case No. 7:14-CV-232 (GTS/ATB)

Hon.

**COMPLAINT**

Demand for Jury Trial

## INTRODUCTION

1. This Complaint arises out of the sale by Defendant of raw milk that contained Metal Contaminant, as herein defined, resulting in damage to Plaintiff, a cheese-maker. Defendant's wrongful actions, including breach of contract, breach of express warranty and breach of implied warranties, have caused Plaintiff to suffer damages in excess of $75,000.

## THE PARTIES, JURISDICTION, AND VENUE

2. Great Lakes Cheese of New York, Inc., a New York corporation with its principal place of business at 23 Phelps Street, Adams, New York 13605, is a manufacturer of cheese.

3. Defendant Agri-Mark, Inc. is a Delaware corporation with its principal place of business at 100 Milk Street, Methuen, Massachusetts 01844. According to its website, Agri-Mark is a dairy cooperative that is the largest supplier of "farm fresh milk" in New England. (*See* http://www.agrimark.net/our_co-op, last visited on March 3, 2014).

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this matter involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

## BACKGROUND

6. On or about June 11, 2013, Great Lakes Cheese and Agri-Mark entered into a purchase agreement (the "Contract") pursuant to which Agri-Mark agreed to sell, and Great Lakes Cheese agreed to purchase, raw milk. The Contract was effective January 1, 2013 through December 31, 2013. A copy of the signed Contract is attached to this Complaint as **Exhibit 1**.

7. Pursuant to the Contract, on or about August 14, 2013, Agri-Mark's agent M&T Transport delivered to Great Lakes Cheese's plant in Adams, New York (the "Adams Plant"), a shipment of approximately 40,498 pounds of Agri-Mark's milk (the "Agri-Mark Shipment"). A copy of the August 14, 2013 shipping record is attached to this Complaint as **Exhibit 2**.

8. The Agri-Mark Shipment was pumped from M&T Transport's truck at Bay 4 of the Adams Plant into the plant's Silo 700. Once the unloading process of the truck was complete, the interior of the tank and the manhole covers were cleaned and sanitized by Great Lakes Cheese personnel, and the outlet valves and pump assembly were washed and sanitized by M&T Transport personnel.

9. After all of the Agri-Mark Shipment was emptied from the truck, a Great Lakes Cheese operator disconnected the lines through which the milk was pumped into Silo 700 and noticed that the lines contained what he initially thought was sediment. The operator immediately informed the Adams Plant's night-shift supervisor, who instructed the operator to check the receiving-line filters on the discharge side of the receiving pump at Bay 4. The operator discovered contaminants including metal filings, buffing-wheel material, steel, and stainless-steel cutting-wheel material (collectively, "Metal Contaminant").

10.     At the time of this discovery, the Agri-Mark Shipment (now in Silo 700) was in the process of being transferred to the Adams Plant's high-temperature short-time ("HTST") unit for pasteurization.

11.     Upon the order from the night-shift supervisor, the HTST unit stopped taking milk from Silo 700 and began taking milk from Silo 300 (which did not contain milk from the Agri-Mark Shipment).

12.     At the end of the day August 14, 2013, Great Lakes Cheese's personnel inspected the filters of the silos from which milk was pumped to the HTST unit and discovered that they contained Metal Contaminant.

13.     Great Lakes Cheese's personnel also found Metal Contaminant in the filters of its cleaning system (CIP System 2) that services the truck washings for Bay 4, where (as noted above) the Agri-Mark Shipment was emptied into Silo 700.

14.     Metal Contaminant was also found in the filters of the Adams Plant's "ultra-filtration" unit and the post-milk HTST unit.

15.     The presence of Metal Contaminant in all of these filters indicated that the entire line from Bay 4 to the cheese-vat process had been contaminated.

16.     On August 14, 2013, Agri-Mark's milk from Silo 700 introduced Metal Contaminant to Vats 31, 32, 33, and 34—a total of approximately 30,852 pounds of cheese.

17.     Silo 700 was left with approximately 247,000 pounds of milk that had been contaminated with Metal Contaminant. This milk could not be used, and Great Lakes Cheese was compelled to remove and discard this milk and clean the silo.

18.     The next day, August 15, 2013, Great Lakes Cheese informed Agri-Mark's Robert Gilcrist that the Agri-Mark Shipment was contaminated and that Agri-Mark would be held responsible for all losses resulting from the contamination.

19. That same day, August 15, 2013, Metal Contaminant was also discovered in milk that had been pumped from Silo 500. This milk was contaminated when a line that had been used to pump Agri-Mark's milk into Silo 700 was used to pump milk from other suppliers into Silo 500. Unbeknownst to Great Lakes Cheese's personnel at the time milk was pumped into Silo 500, that line still contained Metal Contaminant.

20. Great Lakes Cheese was thus compelled to conduct another round of filter inspections and ultimately to remove and discard the remaining milk from Silo 500 and clean that silo.

21. On August 16, 2013, Great Lakes Cheese shut down the milk HTST unit to inspect the filters. Metal debris was discovered. The HTST unit was then shut down again so that the entire unit could be inspected. Later that morning, in order to ensure the safety of its cheese, Great Lakes Cheese decided to shut the entire Adams Plant down and clean the entire plant.

22. Despite a complete cleaning, and several "water flushes" of the milk HTST unit, more metal was discovered. Great Lakes Cheese personnel then hand-cleaned the HTST unit, put the unit back together, and conducted another complete cleaning. Finally, no metal or other debris was found. The milk lines from the storage silos to the milk HTST unit also required additional flushing and cleaning before re-use. The Adams Plant re-started production on August 17, 2013—after losing almost a full day of production.

23. Nonetheless, approximately 227,217 pounds of cheese produced on August 15, 2013, and 104,449 pounds of cheese produced on August 16, 2013, were potentially exposed to Metal Contaminant. A total of approximately 362,519 pounds of cheese were exposed to Metal Contaminant from August 14, 2013 to August 16, 2013. The product cannot be sold for human consumption, and the disposition has yet to be determined.

## COUNT I – BREACH OF CONTRACT

24. Great Lakes Cheese realleges all of the allegations in paragraphs 1-23 above as if fully rewritten here.

25. Great Lakes Cheese performed all obligations under the Contract.

26. Agri-Mark breached the Contract by providing milk that was contaminated.

27. As a result of Agri-Mark's breach of contract, Great Lakes Cheese suffered damages, including the purchase price paid to Agri-Mark for the contaminated milk; losses from the contamination of cheese and other milk at the Adams Plant; lost profits; time and expense incurred in ceasing production, and inspecting and cleaning Great Lakes Cheese's facilities and equipment; attorneys' fees and costs; and other incidental and consequential damages, in an amount in excess of $75,000.

## COUNT II – BREACH OF EXPRESS WARRANTIES

28. Great Lakes Cheese realleges all of the allegations in paragraphs 1-27 above as if fully rewritten here.

29. At all times relevant in this lawsuit, Agri-Mark was a "seller" within the meaning of NY UCC § 2-103(1)(d).

30. At all times relevant in this lawsuit, Great Lakes Cheese was a "buyer" within the meaning of NY UCC § 2-103(1)(a)

31. At all times relevant in this lawsuit, the milk sold by Agri-Mark was a "good" within the meaning of NY UCC § 2-105(1).

32. Agri-Mark made affirmations of fact, promises, and descriptions of its milk. Pursuant to NY UCC § 2-313, these affirmations of fact, descriptions, and promises created express warranties about Agri-Mark's milk.

33. Great Lakes Cheese relied upon Agri-Mark's affirmations of fact, promises, and descriptions; and these affirmations of fact, promises, and descriptions were part of the basis of the bargain and Great Lakes Cheese's decision to purchase milk from Agri-Mark.

34. The milk in the Agri-Mark Shipment did not meet the express warranties made by Agri-Mark, and Agri-Mark thereby breached its express warranties.

35. As a result of Agri-Mark's breaches of express warranties, Great Lakes Cheese suffered damages, including the purchase price paid to Agri-Mark for the contaminated milk; losses from the contamination of cheese and other milk at the Adams Plant; lost profits; time and expense incurred in ceasing production, and inspecting and cleaning Great Lakes Cheese's facilities and equipment; attorneys' fees and costs; and other incidental and consequential damages, in an amount in excess of $75,000.

### COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

36. Great Lakes Cheese realleges all of the allegations in paragraphs 1-35 above as if fully rewritten here.

37. At all times relevant in this lawsuit, Agri-Mark was a "merchant" within the meaning of NY UCC § 2-104(1). As such, Agri-Mark impliedly warranted that the milk it sold to Great Lakes Cheese was reasonably fit for the ordinary purposes for which such milk is used.

38. Because the milk in the Agri-Mark Shipment was contaminated, this milk was not reasonably fit for its ordinary purposes.

39. By selling milk to Great Lakes Cheese that was contaminated, Agri-Mark breached the implied warranty of merchantability.

40. As a result of Agri-Mark's breach of the implied warranty of merchantability, Great Lakes Cheese suffered damages, including the purchase price paid to Agri-Mark for the contaminated milk; losses from the contamination of cheese and other milk at the Adams Plant;

lost profits; time and expense incurred in ceasing production, and inspecting and cleaning Great Lakes Cheese's facilities and equipment; attorneys' fees and costs; and other incidental and consequential damages, in an amount in excess of $75,000.

### COUNT IV – BREACH OF WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

41. Great Lakes Cheese realleges all of the allegations in paragraphs 1-40 above as if fully rewritten here.

42. At the time Agri-Mark and Great Lakes Cheese entered into the Contract, Agri-Mark knew that Great Lakes Cheese required milk that was fit for use in the manufacture of Great Lakes Cheese's products. And Agri-Mark warranted that the milk it sold to Great Lakes Cheese was fit for use in the manufacture of Great Lakes Cheese's products and did not contain contaminants.

43. At the time Agri-Mark and Great Lakes Cheese entered into the Contract, Agri-Mark knew that Great Lakes Cheese was relying on Agri-Mark's skill and judgment to provide milk suitable for use in the manufacture of Great Lakes Cheese's products.

44. In purchasing milk from Agri-Mark, Great Lakes Cheese relied on Agri-Mark's skill and judgment to provide such suitable milk.

45. The milk that Great Lakes Cheese purchased from Agri-Mark was not fit for use in the manufacture of Great Lakes Cheese's products, and Agri-Mark thereby breached the implied warranty of fitness for a particular purpose.

46. As a result of Agri-Mark's breach of the implied warranty of fitness for a particular purpose, Great Lakes Cheese suffered damages, including the purchase price paid to Agri-Mark for the contaminated milk; losses from the contamination of cheese and other milk at the Adams Plant; lost profits; time and expense incurred in ceasing production, and inspecting

and cleaning Great Lakes Cheese's facilities and equipment; attorneys' fees and costs; and other incidental and consequential damages, in an amount in excess of $75,000.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Great Lakes Cheese of New York, Inc. respectfully asks that the Court enter judgment against Defendant Agri-Mark, Inc., and award damages in favor of Great Lakes Cheese of New York, Inc., in an amount in excess of $75,000, together with pre- and post-judgment interest, reasonable attorneys' fees and costs, and all other relief that the Court may deem just and proper.

DATED:  March 3, 2014                                   Respectfully submitted,

                                                   *s/ Dean J. DiPilato*

Dean J. DiPilato, Esq.
Attorney Bar No. 516185
Attorney for Plaintiff Great Lakes Cheese of New York, Inc.
Gilberti Stinziano Heintz & Smith, P.C.
555 E. Genesee Street
Syracuse, New York 13202
Phone – 315.442.0165
Fax – 315.442.0169
ddipilato@gilbertilaw.com

Andrew Agati – N.Y. Bar # 4642955
  (*applying for permanent admission*)
Dennis R. Rose – Ohio Bar # 0039416
  (*pro hac vice will be filed*)
Craig Owen White – Ohio Bar # 0014007
  (*pro hac vice will be filed*)
Oliver J. Dunford – Ohio Bar # 0073933
  (*pro hac vice will be filed*)
Attorneys for Plaintiff Great Lakes Cheese of New York, Inc.
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, OH 44114-2316
Phone – 216.621.0150
Fax – 216.241.2824
aagati@hahnlaw.com
drr@hahnlaw.com
cowhite@hahnlaw.com
odunford@hahnlaw.com