UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
GREAT LAKES CHEESE OF NEW YORK, INC.,

vs.                                        7:14-cv-232

AGRI-MARK, INC.,

                 Defendant/Third-Party Plaintiff,

vs.

BERNARD THOMAS and PENNY THOMAS
d/b/a M&T TRANSPORT,

                 Third-Party Defendants.
-----------------------------------------------------x


*Settlement* - December 16, 2016

James Hanley Federal Building, Syracuse, New York

HONORABLE GLENN T. SUDDABY

United States District Judge, Presiding


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

A P P E A R A N C E S

For Plaintiff:          HAHN, LOESER LAW FIRM
                        Attorneys at Law
                        200 Public Square
                        Cleveland, Ohio 44114
                            BY:  DENNIS ROSE, ESQ.
                                 CRAIG O. WHITE, ESQ.

For Defendant:          SANTACROSE, FRARY LAW FIRM
                        Attorneys at Law
                        1 Columbia Circle
                        Albany, New York 12203
                            BY:  SEAN A. TOMKO, ESQ.
                                 KEITH M. FRARY, ESQ.

For M&T:                WILSON, ELSER LAW FIRM
                        Attorneys at Law
                        677 Broadway
                        Albany, New York 12207
                            BY:  JOSEPH T. PERKINS, ESQ.

                        KNYCH & WHRITENOUR, LLC
                        Attorneys at Law
                        300 South State Street
                        Syracuse, New York 13202
                            BY:  PETER KNYCH, ESQ.

For Harleysville:       RIKER, DANZIG LAW FIRM
                        Attorneys at Law
                        One Speedwell Avenue
                        Morristown, New Jersey 07962
                            BY:  LANCE JON KALIK, ESQ.

For Wesco:              RUSSO & TONER LLP
                        Attorneys at Law
                        33 Whitehall Street
                        New York, New York 10004
                            BY:  TIMOTHY WELCH, ESQ.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1          THE CLERK:  7:14-cv-232; Great Lakes Cheese of

2     New York versus Agri-Mark versus M&T Transport.  Counsel,

3     please note your appearance for the record.

4          MR. ROSE:  Your Honor, Dennis Rose and Craig White

5     for the plaintiff, Great Lakes Cheese of New York.

6          THE COURT:  Good morning.

7          MR. TOMKO:  Good morning, Your Honor.  Sean Tomko

8     and Keith Frary on behalf of Agri-Mark.

9          MR. PERKINS:  Joe Perkins on behalf of M&T

10    Transport.

11         MR. KALIK:  Good morning, Your Honor.  Lance Kalik,

12    Harleysville Insurance Company.  We're an insurer for M&T.

13         MR. WELCH:  And Tim Welch, Russo & Toner, for Wesco

14    Insurance.

15         MR. KNYCH:  Peter Knych, personal counsel for M&T.

16         THE COURT:  Good morning.  I thought I was going to

17    do a pretrial; it looks like I'm going to have a jury panel

18    here.  I'm glad you're all here safe.  A lovely time here in

19    the Northeast.  It's been an interesting couple of days.

20         Let me lay out for you how I would like to proceed

21    this morning.  First of all, I view this as a day which is

22    going to be your best chance to resolve this case short of

23    trial.  We have a trial date in February.  You know, you've

24    traveled here through some adverse conditions and I would

25    like to see this case get resolved today, that's my goal.  So

1    here's how I'm going to proceed.

2         I want to hear from plaintiff's counsel first as to

3    your view of where we are with regard to settlement

4    negotiations and conversations that you've had.  And then

5    I'll hear from any of the various defense counsel for the

6    various parties, anything that you would like to add or

7    subtract from their comments, so to speak.  And then based on

8    where we are, I may send you out of the courtroom one at a

9    time and hear the perspective from each counsel.

10        And Mr. Knych, I think I just throw you in with the

11   M&T people and their insurance counsel and stay in the room

12   with them, because I view your interest as being the same.

13   And we'll go from there if we need to.

14        But we have a trial date, and this is on my

15   three-year list so it's got a nice big star next to it.  It

16   needs to get moved and it's going to get moved one way or

17   another.  So I view myself as a facilitator today.  If there

18   is something that I can do to assist you and help you resolve

19   this case, that's what I want to do.  Okay?

20        So plaintiff's counsel, if you could, I would like

21   to hear about your perspective of where settlement

22   conversations are and what you view as any hangups or

23   problems at this point.

24        MR. ROSE:  I would be happy to, Your Honor.  Can I

25   come to the podium?

1          THE COURT:  Wherever you feel comfortable.

2          MR. ROSE:  This case -- and the Court is aware of

3     the facts because you had the summary judgment.

4          THE COURT:  I am.

5          MR. ROSE:  It was a disaster that is unfortunately

6     an economic disaster right now, could have been a major issue

7     not only for us --

8          THE COURT:  Not sure I would have wanted a bottle

9     of milk from there.

10         MR. ROSE:  Or a sandwich with metal fibers in it.

11    It's clear to us this is a damages case in front of you, it's

12    going to be a damages case down the street in a companion

13    case that we filed against Mr. Thomas and M&T, which

14    concludes it's the same claims, punitive damages claims

15    against him and other claims.

16         Our view is since we last tried to mediate this

17    case, our case has gotten better because of the rulings that

18    you've made and the recognition that has been made about

19    what's going on in the case and the statements that have been

20    made about the case.  We did have two mediations that have

21    failed for various reasons, I'm not going to comment on why.

22    Although I do think it's a fact that there is insurance

23    involved, insurance companies can't figure out what the value

24    of the case is.

25         We presented them damages evidence.  Our actual

1   out-of-pocket damages in this case, including the attorneys'

2   fees that we've incurred, are upwards of a little bit less

3   than $1.7 million and that is the 350,000 pounds of cheese

4   that had to have been disposed of, that is the plant that had

5   to be shut down for two days that had to be cleaned several

6   times because there was such fine fibers, they had to keep

7   doing it.  The Court is aware that this is a highly regulated

8   industry.  You have to make sure it's clean.  One of the

9   problems, it includes having to dispose of the cheese,

10  includes all of those things that comes up to a little bit

11  less than a million dollars.  Interest is accruing.  This

12  happened in August of 2014, so for two years the interest,

13  New York interest has been accruing at 9 percent, and then

14  our attorneys' fees are on top of that, and doesn't include

15  any punitive aspect or compensatory.

16          There was a time when we were in mediation, and we

17  know that there is a million dollar Harleysville policy, the

18  only policy we were made aware of.  Harleysville has a

19  million dollar limit.  They said pay the limits, the mediator

20  tried to fight.  No offer of limits.  In fact, I think it was

21  450 is where they were at; we were at 1.2 was the demand at

22  that point in time.  You have the summary judgment.  You have

23  the order saying, hey, make an offer, you were ordered to do

24  that.  They have to respond.  We did make a global offer to

25  settle everybody for a million.  And then the Wesco comes

into the issue and the offer that came back from Harleysville

was -- or, from M&T was 500,000.  Come here to court and

we'll see if there is going to be more.

Right now, we talked to our client, our demand

right now to settle is 1.5, which is a discount over what we

think we would get in the case, a discount over what we would

get in a punitive case against Mr. Thomas and M&T.  I say

Mr. Thomas, because M&T is a DBA, so he never was

incorporated, so it really is him personally that's involved

in this case.  But we do know that there is Agri-Mark,

secondary over their carrier, available.  You got M&T and

their carrier, you got Mr. Thomas, you got Wesco.  There's a

lot of pockets over here to make us whole.

And I want to pause for a second on Agri-Mark.

They were the people who we sued because they sold us the

milk; it was tainted.  They're the ones who used M&T to

deliver the milk.  And there is no doubt about it, they tried

to defend it was someone else's truck.  There's no doubt in

this instance it was their truck.  They didn't clean it, was

full of this debris, and it contaminated our plant, no doubt

about it.

We tried to get it done the way apparently it

happens in the industry up here, in the dairy industry, the

cheese, everyone does right by everyone else.  Hey, it's our

problem, we're going to take care of your issue, and for

1    whatever reason it didn't happen.  We were forced, we were

2    urged by Agri-Mark, sue us so we get this thing moving and

3    get this claim handled.  Which we did.  And instead of saying

4    let's face up to what's your harm, aggressively defended by a

5    bunch of different people, including Mr. Thomas coming to the

6    view of it's somebody else's truck, I did wash it, I didn't

7    wash it.  That's a fact issue you're going to have.  They

8    never faced the issue that we're now here, which is a damages

9    case.  It's two and a half years later, we're still doing

10   business with Agri-Mark.  M&T is still delivering because

11   it's a small world, a dairy world.

12          We would like to get it done today.  But we're

13   willing to try the case, if need be, whether it's here and

14   over there or whether we consolidate that state case here.

15   And I'm willing to stand in front of a jury and tell them

16   what happened and say I want you to compensate us for what

17   happened in this case.

18          So that's where we are.  Are we not going to move

19   at all, we can't say, but we really think that this group

20   should come together and find a way to make us whole.

21          THE COURT:  Okay.  Thank you.  I neglected to

22   initially say it would be my view that hopefully today it

23   would be a global settlement, that it would resolve the

24   Southern District case and the state case.  I mean, it just

25   makes sense.  And from this day forward, you know, it will be

1    a very short period of time where pretrial motions are going

2    to have to be made, there is going to be a lot of

3    expenditures very, very quickly.  Again, so that's why I say

4    today's the day, and I emphasize that.

5              Any of defense counsel want to be heard, starting

6    with Agri-Mark and then we'll go from there?

7              MR. TOMKO:  Just briefly, Your Honor.  Certainly

8    you understand our position on the motion.  You know,

9    Agri-Mark really didn't do anything wrong here.  It's the

10   hauler.  We think we've proved the case against the hauler.

11   We think that ultimately any damages incurred by Agri-Mark

12   are going to flow through to Mr. Thomas.  Whether or not he

13   has sufficient coverage to cover that it is a problem that

14   Mr. Thomas and Harleysville have and Wesco.

15             Certainly we are here.  I have an adjuster, an

16   insurance adjuster available by phone.  I have my client

17   available by phone.  As Mr. Rose pointed out, there is

18   continued business operations and certainly that we are here

19   in good faith to try to make this matter help it to be

20   resolved.

21             THE COURT:  Okay.

22             MR. PERKINS:  Judge, you wrote a rather

23   comprehensive decision and order regarding the federal court

24   motion.  The only thing I'm not sure about is I thought I

25   heard Dennis say the demand was 1.5 million.  I do have

1  correspondence where the demand says GLC's willing to settle

2  all claims against all parties for $1 million.  That's

3  correspondence dated October 14th of this year.  That having

4  been said, I think you have everybody in the room that you

5  need to settle this case here today.

6          THE COURT:  Okay.  Thank you.  Counsel?  Anybody

7  else?  Do you want to say anything?

8          MR. KALIK:  Your Honor, we issued a general

9  liability policy and I think you're aware we filed a

10  declaratory judgment action in the Southern District against

11  Wesco primarily.

12          THE COURT:  And there you are sitting at the same

13  table with them.  I hope you're getting along.

14          MR. WELCH:  There is a seat between us, Your Honor.

15          MR. KALIK:  I'm being very friendly.  We believe

16  that this was an auto related use, this arose of the use and

17  maintenance of an auto, and that's really going to be a

18  pretty simple issue to resolve in the Southern District.

19  Nevertheless, we've come here today ready to talk and at the

20  right time I would appreciate the opportunity for M&T's

21  defense counsel and myself and Mr. Knych to speak with you

22  confidentially and let you know what our position is and try

23  and move this forward.

24          THE COURT:  Okay.  You have an opportunity to get

25  up and speak.  You haven't been in it as long as everybody

1  else.

2          MR. WELCH:  Not at all, so I'll speak less and

3  respect that.  Obviously, we have an auto policy here.  It's

4  our position that coverage is not afforded for this accident.

5  We understand there is a DJ action that is ongoing.  We also

6  will at least listen and if appropriate maybe participate.

7          THE COURT:  How far along are you in the Southern

8  District?

9          MR. KALIK:  We're just starting, Judge.  Pleadings

10  have been -- I think almost everybody has filed responsive

11  pleadings.  Our preliminary initial conference I think is in

12  January, early January.

13          THE COURT:  Have you had an opportunity to talk at

14  all?  Have you had a chance to look at this and see what it's

15  all about and make some evaluation?

16          MR. WELCH:  My senior partner has and he is

17  available to me by phone.  And I know Lance has spoken

18  directly to him, so they have some communication going on.

19          THE COURT:  Okay, good.  Pete, do you want to throw

20  anything in?

21          MR. KNYCH:  Very briefly, Judge.  My clients are

22  two individuals, Bernard and Penny Thomas.  They are hard

23  working people up in Northern New York.  They have a milk

24  trucking business.  They bought the insurance that you're

25  supposed to buy, an auto policy with a million dollars and a

1   GL policy with a million dollars.  We've got two insurance

2   companies, two smart guys that can't figure it out as to who

3   has to pay.  We had an opportunity to settle this case for a

4   million dollars, but the carriers were in a dispute and

5   consequently that opportunity appears to have been lost.

6   But, you know, my client needs this case settled and he needs

7   it settled today.

8           THE COURT:  Okay.  Thank you.  Why don't we do

9   this.  I'm going to ask everybody to step out of the room

10  except for plaintiff's counsel for a minute, and then we're

11  going to bring you in at various times, I want to talk to you

12  a little bit.  We're going to go off the record at this

13  point.  We'll have off-the-record conversations so that they

14  can speak freely and not have to worry about something on the

15  record.  And we'll go back on the record when we have an

16  agreement.

17           (Recess for discussions off the record.)

18           THE COURT:  We're back on the record.  Here's the

19  situation.  I thought we were going to resolve this, and I

20  think we would but Wesco has taken the position that they're

21  not going to contribute -- they would contribute a nominal

22  amount today, but without an assurance from them that they

23  would not contest the reasonableness of a settlement.

24  Because it became clear to me that these two insurance

25  companies were not going to be able to resolve their issues

1   with regard to contribution.  So the next step for me was to

2   get everybody else up and let the insurance companies

3   litigate this.  And the only way that that could happen is if

4   they agreed that they would not contest the reasonableness of

5   any settlement that I reach with all the other parties here

6   today.  They are not willing to do that.

7          So from my view that ends the discussion.  There is

8   no point in everybody else putting up money, going through

9   this dance and trying to resolve it with the other parties if

10  they do not agree to even say that we won't challenge the

11  reasonableness of the settlement that you reach with the

12  other parties, Judge.  They won't accept that.

13         So I don't see, unless somebody has some

14  suggestions, of any other way to resolve this.  You know, I

15  was perfectly willing to let them fight it out in the

16  Southern District, but that's apparently not going to happen.

17  It's going to happen but after we're done trying this case.

18         MR. KALIK:  Judge, that's disappointing to hear.  I

19  suppose an alternative to Wesco -- and I assume it's Wesco

20  that won't agree, because we certainly would agree that the

21  settlement was reasonable.  But I suppose an alternative, and

22  I'm just thinking sort of out loud here, is that we could

23  put -- if terms were reached, and I don't know if terms are

24  on the verge of being reached, but if they were reached, we

25  could put it on the record here and Your Honor could opine as

1    to whether it was a reasonable settlement.

2          THE COURT:  Well, I think in the range that I'm in

3    in trying to resolve this case, I think it's perfectly

4    reasonable, and it would take some contribution from a lot of

5    different people.  But, quite frankly, what I opine about a

6    settlement is, you know, of no moment really when it comes to

7    your litigation, and I'm not going to sit here and try to

8    suggest to you that it would be.

9          You know, the issue here is, and I have to agree

10    with counsel, you know, for Mr. Thomas, these insurance

11    companies, you need to get your acts together, quite frankly.

12    It's on the verge of being outrageous that this isn't

13    resolved.  And today was your best chance.  And the fact that

14    it isn't getting resolved is again, I can't believe it, quite

15    frankly.

16          And I've expressed this to Mr. Welch, I'm not

17    hiding anything from anybody else.  This case can be

18    resolved.  But, you know, you two insurance companies need to

19    sit down and think long and hard about what you're doing and

20    do it quickly because there is some significant issues with

21    regard to, you know, what you're doing with your

22    responsibilities to your clients.

23          MR. KALIK:  And, Your Honor, just so that the

24    record is clear from my client's perspective, although we

25    thought that an agreement not to challenge the reasonableness

1  of the settlement was a very reasonable request, I just want

2  to make it clear that our money's not contingent on that, if

3  we put on the record the terms of the settlement and the

4  Court gave the opinion that it was reasonable in its view,

5  and whatever effect it had, it had, and we would be willing

6  to take that risk.  But my client has put its full limits on

7  the table and, you know, we've done I think as much as can be

8  expected.  So I just want to make sure that the record is

9  clear from that respect.

10             THE COURT:  Mr. Knych, go ahead.

11             MR. KNYCH:  Judge, we have a letter from

12  plaintiff's counsel, and I think Joe Perkins referenced it,

13  it's October of 2016, saying a million dollars would settle

14  this claim.  The carriers each have the million dollars

15  potentially.  But I'm just wondering, and I have not gotten

16  any -- I haven't got a decision yet from my client with

17  respect to what Your Honor and I talked about, but I'm just

18  asking myself if we did come to a settlement number in this

19  tort action and it was fully funded subject to Wesco agreeing

20  that it's reasonable, that might put some additional pressure

21  on Wesco once that's on the record, to have to officially go

22  on the record and say there is a number, Judge, the attorneys

23  that negotiated have said it's reasonable, including what is

24  potentially Wesco's defense counsel, Joe Perkins.

25             MR. PERKINS:  I am not Wesco.

1           MR. KNYCH:  Well, potentially you are if, in fact,

2   Wesco has a duty to defend.  We have defense counsel that I

3   think can opine that a number is reasonable.  And if Wesco's

4   attorney stands up and says we are not going to consent to

5   that, and it ultimately is determined in a declaratory

6   judgment action that they did have a defense and

7   indemnification obligation, that may be additional evidence

8   of what may be bad faith claims handling.

9           But I understand it may take a number of more hours

10   by the Court to achieve that objective and just getting the

11   tort plaintiffs to agree to a number.  Whether the Court is

12   willing to do that, I don't know.  But I'm certainly willing

13   to continue my efforts with my client.

14           MR. PERKINS:  Judge, I have a letter, for the

15   record -- are we on the record, Judge?

16           THE COURT:  We are on the record.

17           MR. PERKINS:  I have a letter from the plaintiff's

18   attorneys dated October 14, 2016, it says, "Even though the

19   posture of the case has improved for GLC since the mediation,

20   it remains willing to settle all claims against all parties

21   for $1 million."  I came here on behalf of M&T today.  I came

22   with the full policy limits of $1 million willing to

23   contribute them toward the settlement of this action.  And I

24   don't understand.  And it needs to be said for the record, I

25   think that is a reasonable settlement.

1          MR. ROSE:  Your Honor, first off, that offer was

2     made, it was rejected.  And when it was rejected, I said if

3     we show up and there is more money and you're going to offer

4     your limits, we're not settling with everybody, we have

5     Agri-Mark still in the case.  And they knew that coming in.

6     We also had this conference delayed.

7          THE COURT:  When you say it was rejected, when was

8     it rejected and in what form was it rejected?

9          MR. ROSE:  On the phone I asked him to send me a

10    letter.  He sent me a letter saying we offer $500,000.

11    Offering 500,000 means you reject that.  So that's that.  So

12    that letter is gone.

13         THE COURT:  It's of no moment.

14         MR. ROSE:  We didn't have this conference in

15    November, as you may recall, because Wesco needed time.  This

16    position that they're taking, they didn't need time.  We're

17    here.  I'm going to file a motion to hold Wesco in contempt

18    if nothing else to pay whatever it's costing our client to go

19    through this ruse when we said, hey, if we want to try it,

20    we'll try it, way back when.  But it was because Wesco kept

21    needing more time.  And this puts us in a position, a legal

22    position they didn't need more time for.

23         So it was outrageous that they have dragged us here

24    and taken this position.  And we're still willing to talk

25    about our number, as we said before in private, to see if we

1   can resolve the case in some manner.

2           MR. PERKINS:  I am willing.

3           MR. ROSE:  Whether it's a million or a million plus

4   more, whatever it is.  But we're not a million right now.

5   And we're willing to talk.  And it sounds like everyone other

6   than Wesco is willing to say we'll abide by it and

7   Harleysville is willing to roll the dice.  And we're not

8   walking out because we think we were done with negotiating.

9   I don't think anybody is really done.  I think we were trying

10  hard before this road block.

11          MR. WELCH:  Respectfully, Wesco was a late add to

12  this party.  This is a litigation that's been going on for

13  two years without us, and everybody else at this table has

14  significantly more information and is in a better position to

15  value the case.  And the fact that my client is not in a

16  position to be able to waive any right it has, including the

17  right to contest reasonableness here.  And, frankly, this

18  letter, which I understand may have been off the table, is

19  clear evidence.  If this case is settled for north of a

20  million dollars and we have a letter from plaintiff's counsel

21  saying they would take a million dollars, it's certainly

22  reasonable to change that position, and maybe the new number,

23  whatever it is, is not reasonable.  I'm not saying we're

24  taking that position.  All I'm saying is we reserve that

25  right to protect my client.

1          THE COURT:  Mr. Welch, the difficulty here from my

2    perspective is I did delay this conference to give you and

3    your client an opportunity to review this situation and come

4    here with a good faith opportunity to negotiate and try and

5    settle this case and whatever that contribution was going to

6    be.  And if you're telling me you didn't have enough time,

7    you should have notified this Court that you needed more time

8    so that we're not all traveling here in the type of weather

9    that people had to travel in to come here and waste my time,

10   quite frankly.

11         MR. WELCH:  We are here with authority.  The fact

12   is Harleysville doesn't want to agree to the terms that are

13   agreeable to us and could be agreeable to the other parties

14   because they want to continue a DJ action, which is I guess

15   their right.  If they do not want to continue the DJ action,

16   we can all come up with a global number and this case can go

17   away, as well as the state court action and the DJ action,

18   and we can all go home and have a great holiday.

19         THE COURT:  But your authority to settle this case

20   is nowhere near where anybody's going to consider that at

21   this point, and I've tried to relay that to you.  And that's

22   not going to change, correct?

23         MR. WELCH:  Well, the Court offered an additional

24   counter, another number, I did go back and was approaching my

25   people with.  Then the story changed about we also have to

1  concede the reasonableness issue.

2          THE COURT:  Okay.

3          MR. KNYCH:  Wesco may be here with settlement

4  authority, but with all due respect, it also needs to be here

5  recognizing the interest of its insured, my client, to act in

6  good faith, to concede that, which it recently can concede,

7  so that the issues can be narrowed and potentially this case

8  could be settled.

9          What can save the Court a lot of time, if the Court

10  was even inclined to consider what I suggested, is a

11  question.  And I'm not going to ask a question directly, I'll

12  defer to the Court.  The question to Mr. Welch would be, even

13  if the settlement were a million dollars, is he here today to

14  basically assert that he would not, on behalf of his client

15  would not consent or concede that that's reasonable and would

16  not allow Harleysville to fund that settlement for a million

17  dollars?  Because if the Court asks that question and he

18  basically says, that's correct, Judge, I do not have

19  authority.

20          THE COURT:  I think he has answered that question

21  and he has said that they will not consent.

22          MR. KNYCH:  Not even for a million dollars would be

23  my question for him.

24          THE COURT:  I'm not going to speak for you,

25  Mr. Welch.

1    MR. WELCH:  Your Honor, I do not have the authority

2 to waive that at the moment.

3    THE COURT:  Even if I was able to resolve this with

4 all the other parties, which is why I've demonstrated the

5 frustration that I have, they're not going to consent to

6 that.  And so, you know, that's why I say I think we're

7 wasting our time.

8    MR. WELCH:  The flip side of that, Your Honor, is

9 Harleysville's position, are they willing to discontinue the

10 DJ action.  If they're willing to discontinue the DJ action,

11 we'll contribute some to this resolution and all cases go

12 away.

13    THE COURT:  Well, then you two step outside and

14 talk about that and tell me if you can resolve it, how about

15 that.  Because there is the hangup right here, you two.  So

16 you go outside, you tell me if you can come to some

17 resolution right now within the next 15 minutes whether or

18 not you have a proposal to contribute to the settlement

19 between the two of you that's going to resolve this thing.

20    There is no sense of me doing a dance any longer.

21 Because you're telling me you're not going to consent even if

22 I resolve it with everybody else.  Everybody else is willing

23 to resolve this case somewhere between a million and a

24 million-five, and that can happen today, but doesn't make

25 much sense for them to do that if you're saying I'm not

1    consenting to that on behalf of my client.  And, you know,

2    you have an insured client here that's paid for your coverage

3    and your policy and you're telling him you have no

4    responsibility is basically what you're saying.

5           MR. WELCH:  Respectfully, Your Honor, our position

6    is Harleysville also provides the policy here, has the

7    coverage and the limits, and could settle the case at a

8    million and discontinue the DJ action.

9           THE COURT:  Step outside and you can let me know.

10   Do you want to put something on the record?

11          MR. KALIK:  I just want to say, although I think

12   it's perfectly reasonable to consent to the reasonableness of

13   the settlement, we've withdrawn that, so we're ready to go

14   forward whether they consent or not.  We'll take the risk and

15   let them litigate that issue, because I am fully confident

16   that this settlement is going to be upheld as reasonable.  I

17   just want the record to be perfectly clear of our position.

18          MR. PERKINS:  I agree with that.

19          THE COURT:  Okay.  Gentlemen, I'm going to ask you

20   to step out and talk.  I'm going to ask everybody to step out

21   and I want to talk to plaintiff's counsel, and then I'm going

22   to see what you have to bring, Peter, and Agri-Mark, if you

23   could.  We're going to go off the record.

24          (Recess for discussions off the record.)

25          THE COURT:  We'll go on the record.  We started

1   this settlement conference at 11:00.  It's now almost 2:00.

2   It's my understanding the parties have a partial agreement to

3   settle the majority of this litigation.  And I'm going to ask

4   plaintiff's counsel to put on the record the settlement

5   understanding that you have reached with the parties that

6   you've reached it with and what it is.  And then if anybody

7   else wants to put anything on the record to clarify his

8   statement and understanding of the settlement, we'll allow

9   you to do that.  Go ahead, sir.

10          MR. ROSE:  Thank you, Your Honor.  Our

11   understanding of the settlement of the case in front of this

12   Court, which is Great Lakes Cheese of New York versus

13   Agri-Mark, and Agri-Mark's third-party case against M&T, is

14   that the case will be settled with a payment of $1 million

15   that will be paid by Harleysville in this matter, and then an

16   additional $50,000 paid by Agri-Mark, and there will be a

17   $25,000 contribution from Mr. Thomas and M&T.  That

18   contribution will be a cost recovery for us of our costs

19   because this delay has ended in that amount, which we don't

20   know what that cost has been to us.  So that is the monetary.

21          There will be dismissals with prejudice of this

22   case by the plaintiffs and also by the third-party plaintiffs

23   and the cross claimants.  I guess there was no cross

24   claimant.  Third-party plaintiffs.  We also will dismiss with

25   prejudice the case that has been filed by Great Lakes Cheese

1   against M&T in the state court action.  I understand releases
2   will be sent to us by Mr. Tomko and I assume also by
3   Harleysville counsel quickly.  The settlement will be funded
4   and will be paid by year-end.  And I think we've had
5   agreements that the checks will be cut and will be paid by
6   the end of the year, contingent on the releases, in a quick
7   manner and we will commit to turn those around.

8          And Wesco is not a party of this, we didn't make a
9   claim.  So as far as we know, they are not contributing to
10  any part of it.  I think that's my understanding unless there
11  is something else.

12          MR. KNYCH:  For the record, the state court action
13  that will be dismissed with prejudice is entitled Great Lakes
14  Cheese of New York, Inc. versus Bernard Thomas and Penny
15  Thomas d/b/a M&T Transport, index number 2015-2594, Supreme
16  Court, State of New York, Jefferson County.

17          THE COURT:  Anybody else for the record?

18          MR. KALIK:  Thank you, Your Honor.  This does not
19  resolve, the settlement today does not resolve the Southern
20  District action that my client initiated against Wesco for
21  seeking reimbursement of defense and indemnity, and we
22  specifically preserve that case and do not waive our claims
23  in that case.

24          THE COURT:  Okay.

25          MR. TOMKO:  On behalf of Agri-Mark, we will be

1    contributing $50,000 toward the settlement.  We will forward

2    a general release to Great Lakes Cheese.  We will forward a

3    stipulation of dismissal to all parties, and it will include

4    a discontinuance of any and all claims over and against

5    Bernard Thomas and Harleysville to resolve this matter fully

6    and fairly.  Agri-Mark is not a party to the state court

7    matter, so we will not be producing or providing stipulation

8    on that.

9            MR. PERKINS:  So stipulated.

10           MR. ROSE:  Your Honor, one comment.  I'm sure that

11   that's not what Mr. Tomko meant.  He said general release.

12   The release will pertain to this incident.  Obviously, if he

13   wants to give anybody general releases, it will be a release

14   specifically designated to this case.

15           MR. TOMKO:  It will be a specific release, Your

16   Honor, sorry about that.

17           THE COURT:  Anything else that needs to be put on

18   the record?  With the understanding of the parties that no

19   part of this settlement is going to resolve anything or

20   dismiss any of the parties out of the Southern District case.

21   That's understood?

22           MR. ROSE:  I guess I can ask, Lance, is there any

23   need for Great Lakes Cheese to be part of that case or can

24   they be dismissed out of that case?

25           MR. KALIK:  We'll talk off line, but as long as the

1  parties agree to be bound by whatever that judgment is and

2  they're not facing any downstream claim.

3           THE COURT:  There is a rule, Rule 41, that any

4  dismissal of an action needs to be stipulated by all parties.

5  So just so you understand that going forward, so Wesco --

6           MR. ROSE:  Do you have any objection?  Do you want

7  Great Lakes Cheese to continue to be a party?  Just a matter

8  of us having to deal being ordered to come to Manhattan for

9  pretrials or anything.

10           MR. WELCH:  I understand you guys were having that

11  discussion off line and we'll certainly participate in that

12  discussion.

13           THE COURT:  I just want to be clear on the record

14  that, you know, nothing we're doing here today affects that

15  Southern District case.

16           MR. ROSE:  We understand.

17           THE COURT:  Very well.  I want all parties to

18  understand.

19           MR. TOMKO:  We're going to make the same request on

20  behalf of Agri-Mark, but again we'll discuss that off line.

21           THE COURT:  What you work out with regard to that

22  Southern District case is between the parties and nothing we

23  do here today is going to affect that.  Okay?

24           MR. TOMKO:  Yes.

25           THE COURT:  All right, gentlemen.  Thank you for

1   your efforts.  I apologize for my frustration at one point

2   but I'm glad that this is resolved.  I think it's reasonable.

3   I think it's appropriate.  And I hope that you can get the

4   Southern District case worked out too.  May take some more

5   effort.  As you know, it was my hope to get a global

6   settlement today.  It didn't happen.  But I'm very happy you

7   were able to resolve this aspect and people can continue to

8   do business in a very small industry in a cooperative way,

9   it's a good sign.

10          So I want to thank you all for your participation

11   and cooperation and safe home.  Good luck and happy holidays.

12          MR. ROSE:  We appreciate it.

13          MR. TOMKO:  Thank you, Judge.

14          THE CLERK:  Court's adjourned.

15                  *              *              *

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter